May it please the court, Suzelle Carrillo-Oriana on behalf of Mr. Lasane Robertson. This court grants equitable tolling on a case-by-case basis. And in particular, in cases of mental impairments, it applies the test articulated in Bill's v. Clark, which has two prongs, one, severe mental impairment, and the other, reasonable diligence. Here, Mr. Robertson can satisfy both. He has always had low intellectual functioning. He has been in special education his entire life. And the records in this case demonstrate that he has, even in prison, has always needed assistance understanding proceedings that's happening in court and in prison, and also writing documents. As a result, he was unable to do two of the things that Bill's requires, understand the need to file a timely federal petition, and understand and be able to actually personally prepare and effectuate the filing of a habeas petition. Mr. Robertson testified at the evidentiary hearing that he did not understand that there were deadlines in this case. His only understanding of what habeas is is that it's a way to get back into court, and that he did not ever supervise any of the work that was done on his case, simply letting his jailhouse lawyers handle the proceedings because he himself was unable to. In terms of diligence, all that's mentioned is the brutality of the circumstances. Here, Mr. Robertson testified that he was never able to get assistance when he first arrived in prison, that he consistently asked for help because he knew he could not effectuate a filing on his own, but that all the people who were willing to help either wanted sexual favors or wanted to charge at least $300 or $400, money that he did not have. So he took the assistance that he could afford, which was to pay canteen money in this case. And that was only to people who were willing to help him at that amount, Jay Burton in 2006 and Anthony Clark in 2011. Despite their assistance, he was unable to effectuate a timely federal petition because by the time that he got their assistance in 2006, he had already been three years over the statute of limitations deadline. Burton and Clark did their best to exhaust state remedies, but by the time that they filed a federal petition, the one-year statute of limitations had already passed. So under the totality of the circumstances in this case, there's no way that Mr. Robertson could have filed a timely petition, but he was reasonably diligent in attempting to do so. So his mental impairments did cause his untimely filing. Now, the district court below found that the assistance of the jailhouse lawyers actually stopped the impairment. And that's not the case here. This court in Bills specified that while the assistance of jailhouse lawyers is certainly one factor, an important factor, it's not the only factor because the other things that the court must look at is whether or not the person was able to cooperate with and supervise the assistance that was given by the jailhouse lawyers. In this case, Mr. Robertson testified that once he got the assistance, he did not know what was being filed, what court it was filed in. And when he lost the assistance of Mr. Burton in 2006 and came back to court and went back to Corcoran Street Prison and realized that his state petition had been denied, he had no idea where he had to file anything. And then another inmate told him, wrote something for him, and told him he had to file it in court. But then again, he was transferred and didn't know where to file that paperwork. So the record here makes clear that Mr. Robertson had no capability to actually effectuate a filing himself and that he really was dependent on the assistance of these jailhouse lawyers. And that because of his constant transfers, he was unable to keep the assistance, the continuous assistance of these jailhouse lawyers. Clearly, had he had the assistance of Mr. Burton throughout from 2006 on, he could have effectuated a timely filing. But he wasn't able to through no fault of his own, because both he and Mr. Burton were transferred. Unless this court has any questions, I'll reserve the rest of my time for rebuttal. All right. Thank you. Thank you. Good morning, Your Honors. May it please the court, Charles Lee for the warning. Dishner has failed to prove he was severely mentally impaired for more than eight years, because the record shows he was competent at least some of that time. But even if you give him the benefit of every doubt, which is what the district court did here, and presumed that he was incompetent the entire time, the petition would still be untimely, because he had help from other inmates for more than one year. In fact, Anthony Clark himself helped petitioner for more than one year, from at least December 2010, when he filed this California Court of Appeal petition, through January 2012, when he filed this federal petition. And as the district court found, because none of the state petitions told the statute of limitations, because they were each denied as untimely, the statute ran, even if you only consider the time that he had help from Anthony Clark. But again, this is construing the record as favorably as possible to petitioner. The fact is, he was not incompetent for more than 8 and 1⁄2 years. If you look at the record, there is considerable evidence of his competence. First, there's his education history. This is an inmate who has a high school diploma. He attended community college. He took classes in prison that focused on reading and writing, and he maintained the B average. And on top of that, he scored between a fifth and an eighth grade level on his TAB. He didn't speak very well for the high schools of California. He had an IQ of 52. Well, Your Honor, the IQ of 52 is based only on Dr. McDermott, his expert's evaluation. But Dr. McDermott stated in her declaration that, given the inconsistencies in his test scores, he likely wasn't putting forth adequate effort into his cognitive tests. She also found that he was likely malingering as to mental illness. So I think this shows a pattern of- Well, she said his low functioning likely has been present throughout his lifetime, including from 2002 through 2012. Well, she did say that, Your Honor, and I disagree with her interpretation. Because as she also said in her original report, which is on page 357 of the excerpts of records, Petitioner A was probably malingering as to mental illness. And B, he likely was not putting forth adequate effort into his cognitive tests. So in my opinion, the IQ finding of 52 should be invalidated because he wasn't trying hard enough. And that, again, fits into a larger pattern with this inmate of manipulative behavior and of malingering. He testified at the evidentiary hearing that he did not receive a B average in his prison courses. It was only until I showed him the transcript of his B maintained the B average. So I think his testimony and also the findings of Dr. McDermott should be taken with a grain of salt. And I would also urge Your Honors to look at the large paper trail of writing in this, of handwritten documents in this case. As I said in the brief, these were written over the course of 10 years. They were filed across several different prisons. And they were all in very similar handwriting. And that shows that the petitioner likely wrote them himself. And in particular, I'd like to direct Your Honors attention to two documents. The first is in the excerpts of records. Page 119 is in the second volume. What is it? What's the document? Sorry? What is the document? The document is an opposition to motion to dismiss filed by petitioner at Salinas Valley State Prison. And the second documents are in the supplemental excerpts of records, first volume, pages 22 and 23. And these are letters written by petitioner to the court, to the district court, from California State Prison Solano. Now, I think it's clear that looking at the handwriting on these documents, they were written by the same person. But petitioner testified at the evidentiary hearing that the opposition was written by Anthony Clark at Salinas Valley State Prison. And the letters were written by his cellmate, Paul McGee, at California State Prison Solano. I think that shows, once again, that he was stating things that were not true at the evidentiary hearing. And once again, it fits into a larger pattern of manipulation and of lingering. Again, he was sent to a Tascadero State Prison back in 2005, 2006. And as Dr. McDermott found, the staff at a Tascadero also concluded that he was malingering there. So I think the record shows that he has demonstrated more than enough that he has been competent, and that he has a history of using the mental health and developmental disability system to try to get what he wants. And you can see by the contemporaneous medical reports as well, he was found to have normal cognitive functions in 2002 when he first entered the prison. In August 2002, he was given a phase three Clark evaluation. And it was found that he was not qualified for the developmental disability program. He was given a follow-up evaluation, again, in April 2003, where he was again found not qualified for the developmental disability program. And one of the things that the evaluators noted was that he had adequate reading and writing skills. It wasn't until 2004, when his mental health deteriorated, that his cognitive functions also suffered. And he was sent to the developmental disability program. And he stayed there from 2004 until 2007 while he was recovering his mental health. And again, since 2007, he's been out of the developmental disability program, despite being monitored constantly by prison officials. And for the most part, his cognitive functions have been found to be normal. So I think the totality of his prison records and the fact that he's been able to write and read and attend prison classes and maintain a B average shows that he's more competent than he lets on. All right. Thank you, counsel. Thank you, Honor. I'd like to focus this question about Mr. Robertson's malingering. Dr. McDermott, because of the concerns that were raised, specifically looked at this issue very carefully. And she found that, although there were concerns about the malingering of his psychiatric symptoms, she had no concerns about the malingering of his intellectual impairments. And while there was some discussion about a lack of effort, she found that there was consistencies within the testing that he took. And that she found that his actual cognitive ability was probably most likely that of a third grade level. So even with acknowledging that there may have been a lack of effort, at best, Mr. Robertson is still severely intellectually delayed. Now, Respondent talks a lot about Mr. Robertson's handwriting. And Mr. Robertson testified at the hearing that that was not his writing. He was shown several documents. And he said, I didn't write these. Some of them, he said it wasn't even his signature. While there are certainly similarities in some of the documents, if you look at the documents, they're not the same. Some of the documents even have different people who wrote different portions of the documents. And on top of that, that doesn't explain why, time and time again, CDCR mental health staff is consistently writing documents for Mr. Robertson, and why Mr. Robertson is consistently complaining that he's having to pay money to other inmates to write documents for him, including basic documents like writing letters home. Mr. Robertson testified that, yes, he received a high school diploma, but he received it from a school at a group home, and that he only received it because he was able to play football. He also testified that when he tried to enroll in college classes, that he had to drop out because he was not able to keep up with the material. And the class that Mr. Lee talks about, he was actually kicked out of because it was discovered that he had a diploma. And the class was actually working on whole number operations, i.e. basic math, not reading and writing. So in totality, the record before this court shows that Mr. Robertson has consistently been found intellectually impaired, not just by Dr. McDermott, but by the Los Angeles Unified School District, as well as by CDCR mental health staff, which time and time again in different reports found him to be intellectually impaired. On top of that, the report in 2004, that's the phase three cognitive evaluation, suggests under Clark, this was a phase three evaluation, which means that Mr. Robertson had had two prior evaluations, a phase one and a phase two, which consist of cognitive testing. And for a person to have a phase three evaluation, it means that that person has to have scored below an 80 on the first phase one, and below a 75 on phase two. And the fact is that although Mr. Robertson was sometimes provided adaptive supports and sometimes he wasn't, he was never completely found to be someone who was high functioning by the prison. Thank you. I was just gonna say, that means we have two minutes left. Do you have any comment on the period of time on which the district judge relied on? The magistrate's report is much more thorough, although not necessarily persuasive about the mental health. And he does, magistrate judge does take at face value the 52 IQ and a number of other things on the mental impairment. But the district judge accepted the report, but the only thing he relied on in doing this was the fact that Mr. Robertson did not have, the fact that he had representation during a period of more than a year, cut off his equitable tolling. This is with the representation by the fellow prisoners. What do you have to say about that finding, that there was more than a year in which he was represented by prisoners who did file with the state court, but did not file with the federal court? Yes, your honor. Mr. Robertson was represented by two inmates, Mr. Burton in 2006, who was then transferred. And then he is assisted by Anthony Clark starting in 2011. Mr. Clark basically at that point finished exhausting Mr. Robertson's claims because the reality was that Mr. Robertson did not have any exhausted claims. He had never filed a direct appeal. So Mr. Clark filed in the California Court of Appeal. Once he received that denial, he immediately filed in the California Supreme Court. And once he received that denial, he filed a motion for reconsideration. And once he received that denial, he filed in the federal court. Now that may have been more than a year, but the reality is that under the law at the time, that's what a petitioner thought that they had to do. They had to exhaust state remedies. And at that point, Mr. Robertson did not have exhausted state remedies so that he could file a federal petition. Had he filed a federal petition, it would have been denied for having raised solely on exhausted claims. Now I'd like to go back to this question about the magistrate's mining. Counsel, now you are over your time. Okay, sorry. All right, thank you very much. Thank you both. Robertson versus Davey will be submitted.
judges: Reinhardt, Fernandez, Wardlaw